Filed 7/16/26  P. v. Albro CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DARRYL GLENN ALBRO,<br><br>    Defendant and Appellant. | C103118<br><br>(Super. Ct. No. 98F06647) |

In 1999, a jury found defendant Darryl Glenn Albro guilty on one count of mayhem, six counts of assault with a semiautomatic firearm, one count of unlawful possession of a firearm, and one count of resisting a peace officer.  The jury found various firearm and great bodily injury enhancement allegations to be true.  Following a bifurcated court trial on defendant's prior convictions, the trial court found that defendant had three prior serious felony convictions within the meaning of the three strikes law (Pen. Code, §§ 1170.12, 667, subds. (b)-(i))[1], two of which qualified for the five-year serious felony enhancement (§ 667, subd. (a)), and that defendant served a prior prison term within the meaning of section 667.5, former subdivision (b).  The trial court imposed an aggregate indeterminate prison sentence of 69 years to life consecutive to a determinate term of 11 years.

In 2025, the trial court resentenced defendant under section 1172.75, striking the one-year prior prison term enhancement, and otherwise reimposing the original

---

[1]  Undesignated statutory references are to the Penal Code.

1

sentence.  Defendant appeals from the resentencing judgment, arguing the trial court erred in (1) failing to dismiss his serious felony enhancements, (2) declining to dismiss his prior strike convictions, (3) reimposing the restitution fine, (4) reimposing all of the fines and assessments without determining his ability to pay, and (5) improperly awarding custody credits.  The People agree that the restitution fine must be vacated, and they also identify a clerical error in the abstract of judgment regarding the indeterminate term orally imposed for count 1.

We agree that the restitution fine must be vacated, but we conclude defendant's remaining contentions lack merit.  We will modify the judgment to vacate the restitution fine, affirm the judgment as modified, and direct the trial court to prepare an amended abstract of judgment reflecting the judgment as modified, and also reflecting that the indeterminate term orally imposed for count 1 is 68 years to life.

BACKGROUND

In July 1998, defendant, his wife T., and their three children went to a garage sale at T.'s parents' house.  Several of T.'s family members were at the garage sale. Defendant became intoxicated at the house and started "acting like a child."  When T. saw him talking to two girls who appeared to be 14 years old, she left with their children. One of T.'s brothers, A., asked defendant "why he was hitting on children."  Defendant started swearing at everyone, including T.'s mother.  A different brother, D., told him "not to cuss at her."  Defendant asked him "if he had a problem."  D. said there was no problem as long as defendant stopped "disrespecting [his] mother."  Defendant said, " 'I'm going to get my shit,' " and left in his truck.  T. returned to the house a few minutes later and was told what happened.  She warned everyone that defendant was probably going to come back with his gun.  Defendant pulled up to the house about 10 minutes later, approached A., and asked what his problem was.  A. told him "to stop disrespecting their mother."  Defendant responded:  " 'I'll do what the fuck I want, you've got a problem?  I'll fix that.' "  Defendant went back to his truck, pulled a

2

semiautomatic handgun from the center console, and fired five rounds at A. and everyone in front of the house. He then left the scene.

Bullets struck A. in the knee and ankle. He "lost his kneecap and would possibly need to use a cane the rest of his life." No one else was hit. After emergency responders arrived at the scene, defendant called D. and apologized. He said he was not trying to hit anyone, but earlier in the day defendant said he wanted to go back to prison and needed "a good reason." Defendant was arrested after a stand-off with a SWAT team.

A jury convicted defendant on one count of mayhem, six counts of assault with a semiautomatic firearm, one count of unlawful possession of a firearm, and one count of resisting a peace officer. The jury also found various firearm and great bodily injury enhancement allegations to be true.

Defendant had prior convictions, including three strike offenses. In 1983, he was convicted of robbery and attempted robbery. Those strike offenses were committed on separate occasions against separate victims, but resolved by guilty plea in the same proceeding. Defendant was committed to the California Youth Authority (CYA). In 1988, after his parole from the CYA, he was convicted of a misdemeanor offense and placed on probation. In 1989, defendant was convicted of another robbery, his third strike offense, but also placed on probation. In 1991, he was convicted of attempted possession of a stolen vehicle in Nevada. And in 1992, defendant was convicted of selling cocaine base and sentenced to prison.

Based on the two convictions in 1983 and the conviction in 1989, the trial court found three strike allegations to be true, two of which qualified for five-year serious felony enhancements. And based on the 1992 prison commitment, the trial court found a one-year prior prison term enhancement allegation to be true. The trial court imposed an aggregate indeterminate prison sentence of 69 years to life (44 years to life for count 1, plus 25 years to life for the firearm enhancement) consecutive to a determinate

term of 11 years (two five-year serious felony enhancements, plus the one-year prior prison term enhancement).

In 2023, pursuant to section 1172.75, having received information that defendant's sentence included a now-invalid prior prison term enhancement, the trial court appointed counsel for defendant and ordered briefing on any other resentencing matters. The People agreed that the prior prison term enhancement had to be dismissed, but opposed any other changes to the original sentence. Defendant argued, among other things, that the trial court should also dismiss his five-year serious felony enhancements and at least one of his strike convictions. Regarding the enhancements, defendant argued that two mitigating circumstances set forth in section 1385, subdivision (c)(2) applied in this case, requiring the trial court to conclude that those circumstances weighed greatly in favor of dismissing the enhancements unless dismissal would endanger public safety. Defendant argued that his rehabilitative efforts while incarcerated made it unlikely that dismissal of the enhancements would endanger public safety. As for dismissing the strike convictions, defendant argued that his background, character, and prospects brought him outside the spirit of the three strikes law. Attached to defendant's resentencing brief were several course completion certificates, laudatory chronos, and support letters from correctional staff.

At the subsequent resentencing hearing, the trial court recalled defendant's sentence, struck the one-year prior prison term enhancement—reducing his determinate and indeterminate terms by one year—and otherwise reimposed the original sentence, resulting in an indeterminate term of 68 years to life consecutive to a determinate term of 10 years.

DISCUSSION

I

Defendant contends the trial court erred in failing to dismiss his serious felony enhancements under section 1385.

4

Senate Bill No. 81 (2021-2022 Reg. Sess.) "amended section 1385 to specify factors that the trial court must consider when deciding whether to strike enhancements from a defendant's sentence in the interest of justice. (Stats. 2021, ch. 721, § 1.)" (*People v. Sek* (2022) 74 Cal.App.5th 657, 674.) As amended, section 1385, subdivision (c)(1) states in relevant part: "Notwithstanding any other law, the court shall dismiss an enhancement if it is in the furtherance of justice to do so … ."

Section 1385, subdivision (c)(2) lists nine mitigating circumstances and requires the trial court to "consider and afford great weight to evidence offered by the defendant to prove that any of the mitigating circumstances in paragraphs (A) to (I) are present." The subdivision continues: "Proof of the presence of one or more of these circumstances weighs greatly in favor of dismissing the enhancement, unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) The following mitigating circumstances are relevant here: "(B) Multiple enhancements are alleged in a single case. In this instance, all enhancements beyond a single enhancement shall be dismissed. [¶] (C) The application of an enhancement could result in a sentence of over 20 years. In this instance, the enhancement shall be dismissed. [¶] … [¶] (H) The enhancement is based on a prior conviction that is over five years old." (§ 1385, subd. (c)(2)(B), (C), (H).)

In *People v. Walker* (2024) 16 Cal.5th 1024 (*Walker*), the California Supreme Court held that section 1385 "does not erect a rebuttable presumption in favor of dismissal that can only be overcome by a finding that dismissal endangers public safety." (*Id*. at p. 1033.) Instead, so long as the trial court "assigns significant value to the enumerated mitigating circumstances when they are present" (*id*. at p. 1029), "trial courts retain their discretion to impose an enhancement based on circumstances 'long deemed essential to the "furtherance of justice" inquiry.' " (*Id*. at p. 1033.) Moreover, in *People v. Mazur* (2023) 97 Cal.App.5th 438, review dismissed after *Walker* was decided, the appellate court held "the 'shall be dismissed' language of the mitigating circumstances in

5

subdivisions (c)(2)(B) and (C)—read in the context of the statute as a whole—only requires the court to dismiss the enhancement if it first finds that dismissal is 'in the furtherance of justice.' [Citation.]" (*Id*. at p. 445.) This is because "the statutory phrase 'shall be dismissed' in section 1385, subdivisions (c)(2)(B) and (C) cannot be read in isolation. [Citations.] Construed as a whole, the statute makes clear that all the mitigating circumstances listed in subdivision (c)(2) merely guide the court's discretion in determining whether a dismissal is in furtherance of justice. Subdivision (c)(1) first sets forth the controlling 'furtherance of justice' standard for dismissal. Subdivision (c)(2) then states that the court must give great weight to the presence of any one or more of the nine listed mitigating circumstances '[i]n exercising its discretion' whether to dismiss." (*Ibid*.)

We review a trial court's denial of a defendant's request to dismiss a sentence enhancement for abuse of discretion. (*Nazir v. Superior Court* (2022) 79 Cal.App.5th 478, 490.)

In denying defendant's request to dismiss the enhancements, the trial court stated that it was guided by section 1385, subdivision (c), noting that it was required to "dismiss an enhancement if it is in the furtherance of justice to do so" and that it was also required to "afford the mitigating circumstances of … section 1385(c)(2) great weight toward dismissal of the enhancement unless [it] finds that the dismissal of the enhancement would endanger public safety." After defining "endanger public safety," the trial court stated: "The defense argues mitigating factors under [section] 1385(c)(2). The defense brief does highlight some of the rehabilitative efforts that the defendant has undertaken while incarcerated. I will note that the dates of the certificates that are in the packet and in the exhibits appear to be from the year 2021 and after. The People have also included a list of eight sustained serious rule violations, ranging from the years 2016 to 2020." The trial court then ruled that "dismissal of the enhancements would endanger public safety" and "would clearly not be in the interest of justice, as the defendant has

6

victimized numerous individuals throughout his adult life, ranging from vulnerable members of the community and members of his own family and extended family."

Defendant argues the trial court abused its discretion in finding that dismissal of the enhancements would endanger public safety because it made this finding despite the overwhelming mitigating evidence, and it failed to give great weight to those factors as mandated by section 1385, subdivision (c). Defendant relies on the following mitigating circumstances in this appeal: (B) multiple enhancements are alleged in a single case; (C) the application of an enhancement could result in a sentence of over 20 years; and (H) the enhancement is based on a prior conviction that is over five years old. (§ 1385, subd. (c)(2)(B), (C), (H).) But he did not assert the paragraph (C) mitigating circumstance in the trial court. And, in any event, that circumstance does not apply because defendant's sentence was already in excess of 20 years without enhancements. Thus, application of either serious felony enhancement cannot be said to have "result[ed] in a sentence of over 20 years" within the meaning of section 1385, subdivision (c)(2)(C). (*People v. Torres* (2025) 113 Cal.App.5th 88, 93 [where "the sentence already exceeded 20 years without any enhancement, … application of the firearm enhancement did not result in the effect addressed by this provision"].)

The other two enumerated mitigating circumstances do apply. (§ 1385, subd. (c)(2)(B), (H).) However, those circumstances weigh greatly in favor of dismissing the enhancements "unless the court finds that dismissal of the enhancement would endanger public safety." (§ 1385, subd. (c)(2).) The trial court so found. Defendant argues the trial court's reasoning was flawed because it discounted the most recent and relevant evidence of defendant's character, the numerous certificates since 2021, and instead relied on outdated, nonviolent misconduct in prison to conclude that dismissal of the enhancements would endanger public safety. But the trial court's ruling does not suggest that it dismissed defendant's rehabilitative efforts or relied exclusively on nonviolent prison misconduct to justify the finding that dismissing the enhancements

7

would endanger public safety. Rather, the trial court described the state of the evidence before it. Defendant made rehabilitative efforts beginning in 2021, but also had eight serious rules violations from 2016 to 2020. Even if the rules violations were nonviolent, defendant also has an extensive history of violent criminal conduct. Based on all of the evidence, the trial court did not abuse its discretion in concluding that dismissal of the enhancements would endanger public safety.

In any event, the trial court also concluded that dismissal of the enhancements "would clearly not be in the interest of justice, as the defendant has victimized numerous individuals throughout his adult life, ranging from vulnerable members of the community and members of his own family and extended family." Defendant argues the trial court "failed to afford the 'great weight' required by law to numerous mitigating factors, including the extreme remoteness of the priors and [defendant's] extensive post-conviction rehabilitation." But, as we have explained, the only mitigating factors to which the trial court was required to afford great weight were (1) multiple enhancements alleged in a single case, and (2) enhancements based on convictions that were over five years old. (§ 1385, subd. (c)(2)(B), (H).) In the absence of evidence to the contrary, we presume the trial court was aware of, and followed, the law. (*People v. Thomas* (2011) 52 Cal.4th 336, 361.) We also presume that the trial court "considered all of the relevant factors in the absence of an affirmative record to the contrary." (*People v. Myers* (1999) 69 Cal.App.4th 305, 310 (*Myers*).) On this record, we presume the trial court afforded great weight to the mitigating circumstances but declined to dismiss the enhancements because countervailing factors neutralized the great weight of the mitigating circumstances, such that dismissal was not in the interests of justice. (See *Walker, supra*, 16 Cal.5th at p. 1036.)

Defendant's rehabilitative efforts are not an enumerated mitigating circumstance. Therefore, contrary to defendant's suggestion on appeal, the trial court was not required to afford great weight to the rehabilitative efforts. Instead, the trial court had broad

discretion in deciding the weight to give those efforts. (See *People v. Lamb* (1988) 206 Cal.App.3d 397, 401.) There was no abuse of discretion.

II

Defendant also claims the trial court erred in declining to dismiss his prior strike convictions.

In determining whether a defendant no longer falls within the spirit of the three strikes law, the trial court considers the nature and circumstances of the present and prior felonies, along with the particulars of the defendant's background, character, and prospects. (*People v. Williams* (1998) 17 Cal.4th 148, 161.) We review a trial court's decision declining to dismiss a strike conviction for abuse of discretion. (See *People v. Carmony* (2004) 33 Cal.4th 367, 376-377 (*Carmony*).) Again, in the absence of an affirmative record to the contrary, the trial court is presumed to have considered all relevant factors and properly exercised its discretion. (*Id*. at p. 378; *Myers*, *supra*, 69 Cal.App.4th at p. 310.) In light of the presumption, the trial court abuses its discretion in declining to strike a prior conviction only in limited circumstances, such as "where the trial court was not 'aware of its discretion' to dismiss [citation], or where the court considered impermissible factors in declining to dismiss [citation]." (*Carmony*, at p. 378.)

In denying defendant's request to dismiss his strike offenses, the trial court stated: "In light of the nature and the circumstances of his commitment offense, which are very aggravating, the facts and circumstances of the prior strike offenses, his poor performance on probation and parole, other felony convictions, having absolutely no breaks in the criminal conduct up to the current commitment offense, I find that the defendant does not fall outside the spirit of the three-strikes sentencing structure and decline to exercise my discretion to dismiss the prior strike convictions." This statement of reasons demonstrates that the trial court was aware of its discretion and considered appropriate factors.

9

Nevertheless, defendant argues the 1998 commitment offense "was an emotional act" and "an aberration rather than the act of a hardened criminal," his 1983 and 1989 strikes "were extraordinarily remote," and his rehabilitative efforts in prison and other "prosocial conduct" bring him outside the spirit of the three strikes law. But the trial court was not required to accept defendant's view of the commitment offense. Although defendant appears to have acted from anger and was intoxicated when he opened fire at the garage sale, he had come back to carry out the crime after leaving to retrieve his gun. He also said that he wanted to go back to prison. Defendant made a conscious decision to open fire. And although defendant's prior strikes were in the 1980's, the remoteness of a strike offense may justify dismissing that offense if the crime was followed by "a crime-free cleansing period of rehabilitation after a defendant has had the opportunity to reflect upon the error of his or her ways." (*People v. Humphrey* (1997) 58 Cal.App.4th 809, 813.) That is not the case here, as the trial court expressly found.

Although the trial court did not mention defendant's rehabilitative efforts when ruling on the request to dismiss the strike offenses, it did expressly consider those efforts when ruling on the request to dismiss the enhancements. Contrary to defendant's argument on appeal, the trial court did not ignore or improperly discount the efforts. Instead, it accurately observed that they did not begin until 2021, and that defendant also had several serious rules violations from 2016 to 2020. We do not presume that the trial court, aware of the rehabilitative efforts, for some reason failed to consider them when ruling on the request to dismiss the strike offenses. To the contrary, on a silent record, we must presume that the trial court considered all relevant factors. (See *Carmony, supra*, 33 Cal.4th at p. 378.) There was no abuse of discretion.

III

Defendant next asserts the restitution fine reimposed by the trial court must be vacated. The People agree.

10

Assembly Bill No. 1186 (2023-2024 Reg. Sess.) amended section 1465.9 to add subdivision (d), which provides: "Upon the expiration of 10 years after the date of imposition of a restitution fine pursuant to Section 1202.4, the balance, including any collection fees, shall be unenforceable and uncollectible and any portion of a judgment imposing those fines shall be vacated." (§ 1465.9, subd. (d); Stats. 2024, ch. 805, § 1.) By its plain terms, the subdivision "appl[ies] retroactively to make any unpaid portion of the [restitution fine] 'unenforceable and uncollectible' " upon the expiration of the 10-year time period, and "*also* mandates that any portion of a judgment imposing [such a fine] be vacated." (*People v. Greeley* (2021) 70 Cal.App.5th 609, 626 (*Greeley*) [ameliorative changes of Assembly Bill No. 1869 (2019-2020 Reg. Sess.), which enacted section 1465.9, applied retroactively; the subdivisions enacted by that bill have materially identical language to subdivision (d)].)

At the original sentencing hearing, the trial court imposed a restitution fine of $10,000 under section 1202.4 and a parole revocation fine in the same amount under section 1202.45. Twenty five years later, at the resentencing hearing, the trial court stated that it was reimposing "all previously imposed fines, fees, and restitution orders." However, as the People acknowledge, "well over 10 years" has elapsed since the restitution fine was originally imposed. Thus, "based on the plain language of the statute, the unpaid balance of the [restitution fine] must be vacated." (*Greeley, supra*, 70 Cal.App.5th at pp. 626-627.) We will modify the judgment to vacate the restitution fine. (*People v. Salstrom* (2025) 117 Cal.App.5th 596, 600-601, review granted Mar. 11, 2026, S295038 [vacating restitution fine older than 10 years where the fine was reimposed at resentencing].)

IV

Defendant further contends the trial court erred in reimposing all of the fines and assessments without determining his ability to pay. But his claim is forfeited because he did not raise the ability to pay issue at resentencing. (*Greeley*, *supra*, 70 Cal.App.5th

11

at pp. 624; *People v. Frandsen* (2019) 33 Cal.App.5th 1126, 1153-1154.) In any event, the contention is moot regarding the restitution fine because we are vacating that fine under section 1465.9. And as for the challenged assessments, the record does not support defendant's assertion that they were ever imposed. The relevant statutory provisions did not go into effect until well after defendant's original sentencing hearing. (See *People v. Fleury* (2010) 182 Cal.App.4th 1486, 1489 [Gov. Code, § 70373 went into effect January 1, 2009]; *People v. Alford* (2007) 42 Cal.4th 749, 753 [§ 1465.8 went into effect in August 2003].) As the People observe, defendant "does not explain how those assessments could have been imposed at the original sentencing [hearing] and then 'reimposed' at resentencing."

V

In addition, defendant argues the trial court improperly awarded custody credits. Specifically, he argues the trial court violated the holding in *People v. Buckhalter* (2001) 26 Cal.4th 20 (*Buckhalter*) by "aggregat[ing] time served under [Department of Corrections and Rehabilitation (CDCR)] custody with conduct credit calculations that are exclusively within CDCR's jurisdiction."

At the original sentencing hearing, the trial court awarded defendant 677 days of actual presentence custody credit, plus 101 days of conduct credit for time spent in local confinement. (See § 2933.1, subd. (c) [conduct credit for local confinement prior to placement in CDCR custody shall not exceed 15 percent for a person convicted of a violent felony].) At the resentencing hearing, the trial court stated that defendant was entitled to 9,680 days of actual custody credit, plus the 101 days of presentence conduct credit noted above, for a total of 9,781 days of credit for time served. The abstract of judgment prepared after the resentencing stated the total amount of credits and also stated: "CDCR TO CALCULATE CREDITS."

At a resentencing, the trial court must award the defendant all actual "custody credit for the time … spent in custody both pre[sentence] and postsentence." (*People v.*

12

*Brammer* (2025) 117 Cal.App.5th 675, 695, review granted Apr. 15, 2026, S295037.) However, "[a]lthough the trial court must calculate and award conduct credits for a defendant's time in custody before sentencing, '[o]nce a person begins serving his prison sentence, he is governed by an entirely distinct and exclusive scheme for earning credits to shorten the period of incarceration,' a scheme 'established and administered' by CDCR." (*Ibid*., quoting *Buckhalter*, *supra*, 26 Cal.4th at p. 31; see also *In re Martinez* (2003) 30 Cal.4th 29, 37 [calculation of conduct credit earned during postsentence confinement should be left to prison authorities].) Thus, as defendant accurately observes, it is "CDCR, not the trial court, [that] should calculate the conduct credits to which [he] is entitled since he began serving his original sentence." (*Brammer*, at p. 695.)

The trial court's award of credits does not run afoul of these rules. The trial court awarded defendant credit for actual days spent in custody presentence and postsentence, plus conduct credit for his presentence confinement. The trial court did not award any conduct credit for postsentence confinement. The abstract of judgment directs CDCR to do so.

Defendant also faults the trial court for failing to state that he had 9,003 days of actual postsentence custody credit, arguing this "ambiguity" might lead CDCR to incorrectly calculate his conduct credits for this postsentence time. But defendant points this court to no authority holding that the trial court must separately specify the presentence custody and postsentence custody totals. He also does not persuade this court that CDCR will be confused as to the amount of postsentence time defendant has served. There was no error.

VI

Finally, as the People correctly observe, the abstract of judgment does not accurately reflect the oral pronouncement of judgment. The trial court imposed an indeterminate term of 68 years to life for count 1. But the abstract of judgment

13

incorrectly shows an indeterminate term of 69 years to life. Because we will direct the trial court to prepare an amended abstract of judgment reflecting the modified judgment, we will also direct that the amended abstract of judgment accurately reflect the term imposed for count 1. (See *People v. Zackery* (2007) 147 Cal.App.4th 380, 385 [the oral pronouncement of judgment controls where there is a discrepancy between it and the abstract of judgment].)

DISPOSITION

The judgment is modified to vacate the $10,000 restitution fine imposed pursuant to section 1202.4, subdivision (b). As modified, the judgment is affirmed. The trial court is directed to prepare an amended abstract of judgment reflecting the judgment as modified, and also reflecting that the indeterminate term imposed for count 1 is 68 years to life. The trial court shall forward a certified copy of the amended abstract of judgment to the Department of Corrections and Rehabilitation.


/S/ _____
MAURO, J.

We concur:


/S/ _____
HULL, Acting P. J.


/S/ _____
FEINBERG, J.